IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PHILIP BRALICH, PH.D, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     vs. | )   Civ. No. 17-00547 ACK-RLP |
| | ) |
| BARRY A. SULLIVAN, ESQ.; MARK | ) |
| PIESNER; CHRIS FRY; JOHN | ) |
| BATALI; WILLIAM O'GRADY; | ) |
| PETER MORRELI; CRAIG | ) |
| WEISSMAN; SAM PULLARA; SCOTT | ) |
| ZIEGLER; TWITTER; THROWNET A. | ) |
| CA-CORP.; THROWNET B. MA- | ) |
| CORP.; SALESFORCE.COM INC.; | ) |
| MICROSOFT; STANFORD | ) |
| UNIVERSITY; NUANCE | ) |
| COMMUNICATIONS, | ) |
| | ) |
|     Defendants. | ) |
| | ) |

## ORDER GRANTING DEFENDANTS STANFORD UNIVERSITY AND NUANCE COMMUNICATION, INC.'S MOTIONS TO DISMISS

For the reasons set forth below, the Court GRANTS Defendants Stanford University and Nuance Communications' Motions to Dismiss, ECF Nos. 12, 15. Both Stanford and Nuance are DISMISSED WITH PREJUDICE for lack of personal jurisdiction, subject to discovery showing that Stanford or Nuance committed acts which would establish either general or specific personal jurisdiction consistent with the Court's discussion of personal jurisdiction in this Order. If the Court had personal jurisdiction over them, it would be inclined to dismiss the

RICO, fraud, and conspiracy claims against Stanford and Nuance, as it does not appear Plaintiff has a factual basis for plausibly stating such claims against them at this time.

## FACTUAL AND PROCEDURAL BACKGROUND

This case has an extensive factual and procedural background, with which the Court and the parties are all familiar. The Court incorporates the factual and procedural background sections of its prior Order from April 10, 2018 addressing the motions and joinder by Defendants Salesforce.com, Craig Weissman, Chris Fry, and Microsoft, ECF No. 134, ("Salesforce Order"), and declines to repeat those sections here except as relevant.

Plaintiff alleges that Defendants Stanford University ("Stanford") and Nuance Communications, Inc. ("Nuance") were both "named as participants in the theft, conspiracy, conversion, chain of misappropriation, and fraud by Sullivan." Third Am. Compl. ¶¶ 12, 62, 191, ECF No. 1-5 ("TAC"). The apparent basis of these allegations is Exhibit L to the Third Amended Complaint, a print-out of a ZoomInfo.com company profile for Thrownet, as of an unknown date. See TAC ¶ 191 & Ex. L. The Court notes that in quoting this exhibit in another allegation, Plaintiff does not mention Stanford or Nuance. See id. ¶ 103. Nuance also allegedly participated in an international virtual reality conference in 1998 where Plaintiff

won first prize for "Best Innovation." Id. ¶ 72

Stanford and Nuance both filed motions to dismiss, which were reinstated in the instant case. See ECF Nos. 8, 12 ("Stanford Mot."), 15 ("Nuance Mot."). Plaintiff's previously filed responses were also reinstated in this case. See ECF Nos. 8, 20 ("Opp. to Stanford"), 21 ("Opp. to Nuance"). Plaintiff also filed a "Further Response and Further Evidence to Counter Initial Motions," ECF No. 92 ("Pl. Supp. Resp."), which this Court has declined to strike. See Salesforce Order at 8 n.4. Replies were filed on April 9, 2018. ECF Nos. 131 ("Stanford Reply"), 133 ("Nuance Reply").[1]

The Court held a hearing on Stanford and Nuance's Motions on April 23, 2018.

<u>**STANDARD**</u>

Federal Rule of Civil Procedure 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court may dismiss a complaint either because it

---

[1] Contrary to Stanford's Reply, Plaintiff did oppose Stanford's motion to dismiss, albeit briefly, but filed his opposition while this case was first removed, well in advance of the required deadline. See Salesforce Order at 8 & n.3.

lacks a cognizable legal theory or because it lacks sufficient factual allegations to support a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).

In resolving a Rule 12(b)(6) motion, the Court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded factual allegations as true. Sateriale v. R.J. Reynolds Tobacco Co., 697 F.3d 777, 783 (9th Cir. 2012). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).

Pro se pleadings and briefs are to be construed liberally. Balistreri, 901 F.2d at 699. However, "a pro se litigant is not excused from knowing the most basic pleading requirements." Am. Ass'n of Naturopathic Physicians v. Hayhurst, 227 F.3d 1104, 1107 (9th Cir. 2000). Before a district court may dismiss a pro se complaint the court must

provide the pro se litigant "with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively." <u>Akhtar v. Mesa</u>, 698 F.3d 1202, 1212 (9th Cir. 2012) (citation omitted). However, the court may deny a pro se litigant leave to amend where amendment would be futile. <u>Flowers v. First Hawaiian Bank</u>, 295 F.3d 966, 976 (9th Cir. 2002) (citation omitted).

## DISCUSSION

Both Stanford and Nuance raise the issue of whether Plaintiff has established personal jurisdiction over them, as well as whether Plaintiff has stated claims for RICO, conspiracy, and fraud. <u>See generally</u> Stanford Mot.; Nuance Mot. Nuance also contests Plaintiff's ability to bring a patent infringement claim. Nuance Mot. at 5. The Court has already addressed the arguments Nuance raises regarding the recoverability of patent damages and Plaintiff's standing for a patent claim in its prior Order and dismissed Plaintiff's patent infringement claims with prejudice. <u>See</u> Salesforce Order at 18-31. The Court declines to repeat its discussion here and will only briefly address Nuance's suggestion that because Plaintiff has no standing for a patent infringement claim, he also "has no standing to assert claims sounding in fraud, conspiracy, conversion, and/or chain of misappropriation resulting from the alleged patent infringement." Nuance Mot. at 5.

First, to the extent that these claims belong to Ergo, rather than Plaintiff, Ergo currently lacks capacity to bring suit. See Salesforce Order at 31. In addition, the Court has not determined whether Plaintiff would have standing for a patent infringement claim, but even if it had, such a conclusion would not necessarily be dispositive of standing for the other claims. Standing is analyzed on a claim by claim basis. See California ex rel. Imperial Cty. Air Pollution Control Dist. v. U.S. Dep't of the Interior, 767 F.3d 781, 789 (9th Cir. 2014) (citing Lewis v. Casey, 518 U.S. 343, 358 n.6 (1996)). If Plaintiff's theory of standing and injury for patent infringement and the other claims was similar, the same determination might result. However, even if Plaintiff has to substantively show patent infringement occurred in order to prove his other claims, his standing for fraud, conversion, misappropriation or conspiracy claims is not necessarily controlled by or dependent on having standing for patent infringement, especially if his claimed injury is different. Nuance's unsupported and unexplained assertion that Plaintiff lacks standing for any claim "resulting from an alleged patent infringement," Nuance Mot. at 5, does not provide a sufficient basis for the Court to conclude that this is the case. Thus, to the extent that Nuance is seeking to dismiss these other claims for lack of standing, the Court DENIES Nuance's Motion.

The Court will next turn to the issue of personal jurisdiction before briefly addressing Nuance and Salesforce's arguments about particular claims.

## I.  Personal Jurisdiction[2]

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004)). "Where, as here, the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts." Id. (internal citation and quotation omitted).

"Federal courts apply state law to determine the bounds of their jurisdiction over a party." Williams v. Yamaha Motor Co., 851 F.3d 1015, 1020 (9th Cir. 2017) (citing Fed. R.

---

[2] The Court notes that in his opposition to Stanford's Motion, Plaintiff states that "[w]hile the Court may not be able to assert Personal Jurisdiction over Stanford, Diversity Jurisdiction does apply in this case...." Opp. to Stanford at 2.  In his opposition to Nuance's motion, Plaintiff does not mention Nuance by name in discussing personal jurisdiction. See Opp. to Nuance at 8-14.  However, the Court reads these filings together with Plaintiff's supplemental response, which does mention Stanford and Nuance by name, albeit briefly. See Pl. Supp. Resp. at 6-7.  The Court therefore will construe Plaintiff as attempting to establish personal jurisdiction over both Nuance and Stanford here, notwithstanding the paucity of the arguments in his Oppositions.

Civ. P. 4(k)(1)(A)).[3] Hawaii's long-arm statute allows service

on a defendant to the full extent permissible by the Due Process

Clause of the Fourteenth Amendment of the U.S. Constitution.

Kowalski v. Anova Food, LLC, Civ. No. 11-00795 HG-RLP, 2012 WL

3308884, at *3 (D. Haw. Aug. 10, 2012) (citing Haw. Rev. Stat.

("HRS") § 634-35 and Cisneros v. Trans Union, LLC, 293 F. Supp.

2d 1156, 1164 (D. Haw. 2003)). As such, this Court need only

decide whether federal constitutional due process permits the

exercise of personal jurisdiction over Defendants.[4] See

Schwarzenegger, 374 F.3d at 800-01. "A court's exercise of

personal jurisdiction over a nonresident defendant may be either

general or specific." Doe v. Am. Nat'l Red Cross, 112 F.3d

1048, 1050 (9th Cir. 1997). "Each defendant's contacts with the

forum State must be assessed individually." Calder v. Jones,

465 U.S. 783, 790 (1984).

A. Consent to Personal Jurisdiction

In his Opposition to Nuance's Motion, Plaintiff makes

several arguments which he suggests show that Nuance, as well as

---

[3] As the Court has previously dismissed Plaintiff's patent
infringement claims with prejudice, the Court applies Ninth
Circuit law, rather than Federal Circuit law. See Salesforce
Order at 11-12 (Federal Circuit law on personal jurisdiction
only applies to claims intimately linked with patent law).
[4] The Court therefore need not address any argument Plaintiff is
attempting to make directly under Hawaii's Long-Arm Statute.
See Opp. to Nuance at 14 (quoting HRS § 634-35 and stating that
the defendants all "participated in the torts and do conduct
business in Hawaii.").

the other corporate and institutional defendants, have consented to personal jurisdiction in Hawaii. See generally Opp. to Nuance at 8-14.

Plaintiff first states that aside from Microsoft who entered a special appearance, the other non-resident defendants waived their right to object to personal jurisdiction by entering general appearances. Id. at 9. However, the distinction between special and general appearances has been eliminated; Rule 12 makes no reference to either and instead makes clear that no defense is waived by joining it with any other defense. See 5B Wright & Miller, Fed. Prac. & Proc. Civ. § 1344 (3d ed.); see also Romero v. Star Markets, Ltd., 82 Haw. 405, 415, 922 P.2d 1018, 1028 (Haw. Ct. App. 1996) (holding that the distinction between special and general appearances has also been eliminated in the Hawaii rules such that a party need not make a special appearance to assert lack of personal jurisdiction). Rather, only a party who fails to dispute personal jurisdiction in making a general appearance or responsive pleading will waive such defense. See Benny v. Pipes, 799 F.2d 489, 492 (9th Cir. 1986), amended, 807 F.2d 1514 (9th Cir. 1987) ("A general appearance or responsive pleading by a defendant that fails to dispute personal jurisdiction will waive any defect in service or personal jurisdiction." (citing Fed. R. Civ. P. 12(h)(1))). Because both Stanford and Nuance

have asserted the lack of personal jurisdiction in their motions to dismiss, Stanford Mot. at 7-14; Nuance Mot. at 4, they have not waived the defense of personal jurisdiction despite making general appearances.

Plaintiff next seems to suggest that by registering to do business in Hawaii, the corporate defendants may have consented to jurisdiction through the designation of an agent for service of process and/or through a possible written consent to jurisdiction.  See Opp. to Nuance at 13.  The Ninth Circuit has suggested that "[i]t is an open question whether...a state may require a corporation to consent to general jurisdiction as a condition of registering to do business in the state."  See AM Trust v. UBS AG, 681 F. App'x 587, 588-89 (9th Cir. 2017).  However, Plaintiff has pointed to no Hawaii statute, nor has the Court been able to locate one, requiring such consent as a condition of registering to do business in Hawaii.  Indeed, Hawaii specifically provides that "[t]he appointment or maintenance of a registered agent in the State does not by itself create the basis for personal jurisdiction over the represented entity in the State."  HRS § 425R-12.  As such, regardless of whether Stanford or Nuance has a registered agent

in Hawaii,[5] the existence of such agent alone appears
insufficient to establish personal jurisdiction.

Plaintiff also suggests that there may be written
consents to personal jurisdiction in Hawaii, the existence of
which could be revealed in discovery.  Opp. to Nuance at 13.
The existence of such consents does not appear to be anything
more than speculation on Plaintiff's part.  In the first place,
the Court has been unable to locate any Hawaii authority
providing for or requiring such consents.  Even if such
authority existed, it would make little sense to not make such
consents publicly available.  If non-public consents existed, it
would require all plaintiffs to engage in jurisdictional
discovery to determine whether any given corporate defendant had
been required to consent to personal jurisdiction here.  Such a
result would hardly be efficient and would rather seem to defeat
the apparent purpose of requiring such consents in the first
place: making personal jurisdiction simple to establish.

Even were the Court to construe Plaintiff's suggestion

_____

[5] Based on the Hawaii Business Registration Division database,
Stanford does not appear to be registered in Hawaii, but Nuance
is a registered foreign profit corporation whose agent is the
Corporation Company.  See
https://hbe.ehawaii.gov/documents/business.html?fileNumber=41552
F1 (last accessed April 11, 2018).  In the Salesforce Order, the
Court found it appropriate to take judicial notice of
information in this database, Salesforce Order at 29 n.11, and
likewise finds it appropriate here.

that these consents exist as a request for jurisdictional discovery, such a request can only be granted "where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." Butcher's Union Local No. 498, United Food & Commercial Workers v. SDC Inv., Inc., 788 F.2d 535, 540 (9th Cir. 1986) (internal citation and quotation omitted). "The trial court still has broad discretion to permit or deny discovery, however, and its decision will not be reversed except upon the clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant." Id. (internal citation and quotation omitted). A stated "belie[f]" that discovery will enable a plaintiff to demonstrate personal jurisdiction constitutes "speculation [which] does not satisfy the requirement that [he] make 'the clearest showing' of actual and substantial prejudice." Id.

Plaintiff has made no showing sufficient for the Court to delay a decision on personal jurisdiction in order to permit jurisdictional discovery regarding the existence of possible written consents to jurisdiction. Plaintiff has not even stated that he believes such consents exist, and admits that he "is unaware at this point" if they exist or not. Opp. to Nuance at 13. Such a statement is even more speculative than the "belief" found insufficient in Butcher's Union. The Court is not

inclined to permit a fishing expedition into the existence of such consents in the absence of any showing that Hawaii requires such consents in the first place, much less keeps any such consents non-public.

The Court therefore concludes that Plaintiff has made no showing that either Stanford or Nuance has consented to personal jurisdiction in Hawaii or that the Court should delay a decision on personal jurisdiction to enable Plaintiff to engage in discovery on this subject.

B. General Jurisdiction

Plaintiff also contends that there is general jurisdiction over Nuance and Stanford, arguing that that the state court erred in previously dismissing other defendants by "apply[ing] the principle of specific personal jurisdiction but ignor[ing] the general jurisdiction under which this case falls."[6]  See Opp. to Nuance at 8.

_____

[6] Plaintiff also asks this Court to "reverse the findings of the lower court on the matter of personal jurisdiction for all defendants" based on his arguments here.  Opp. to Nuance at 8. The Court first notes that the state court is *not* a lower court to this one; as the Supreme Court has recognized, state courts have coequal stature with federal courts.  Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 587-88 (1999) (recognizing that for questions of subject-matter jurisdiction "both expedition and sensitivity to state court's coequal stature should impel the federal court to dispose of that issue first.").  This Court also does not sit in review of state court decisions and has no power to reverse any decision made by the state court in this matter.  See Kougasian v. TMSL, Inc., 359 F.3d 1136, 1139 (9th (Continued...)

Plaintiff appears to suggest that general jurisdiction exists based on a "stream of commerce" theory and the test for minimum contacts based on Internet presence established in <u>Zippo Manufacturing Co. v. Zippo Dot Com, Inc.</u>, 952 F. Supp. 1119 (W.D. Pa. 1997). <u>See</u> Opp. to Nuance at 12-13; Pl. Supp. Resp. at 6-8. However, both of these tests are tests of specific, not general jurisdiction. The Ninth Circuit has stated that the Supreme Court has "reject[ed] [] the 'stream of commerce' theory for general jurisdiction." <u>Williams</u>, 851 F.3d at 1022 n.1 (citing <u>Goodyear Dunlop Tires Operations, S.A. v. Brown</u>, 564 U.S. 915, 927-29 (2011)); <u>see also</u> <u>Haw. Airboards, LLC v. Northwest River Supplies, Inc.</u>, 887 F. Supp. 2d 1068, 1076 n.3 (D. Haw. 2012) ("The stream of commerce theory is applicable only to specific jurisdiction, not general jurisdiction."). The Ninth Circuit has also specifically concluded that the <u>Zippo</u> test, while followed in this circuit, is a test of specific, not general, jurisdiction. <u>See</u> <u>Mavrix Photo, Inc. v. Brand Techs., Inc.</u>, 647 F.3d 1218, 1226-27 (9th Cir. 2011) (finding that

Cir. 2004) (lower federal courts are impliedly prohibited from hearing an appeal of a state court judgment, as 28 U.S.C. § 1257 only authorizes the U.S. Supreme Court to do so); <u>MacKay v. Pfeil</u>, 827 F.2d 540, 543 (9th Cir. 1987) (per curiam) ("Federal district courts, as courts of *original* jurisdiction, may not serve as appellate tribunals to review errors allegedly committed by state courts.") (emphasis in original). To the extent the state court dismissed certain parties for lack of personal jurisdiction without prejudice, the Court may consider those issues if properly presented.

operation of even a highly interactive website does not confer
general jurisdiction as the Zippo test was formulated in the
context of specific jurisdiction).  As such, neither of these
tests establishes general jurisdiction, and the Court only will
consider them below with respect to specific jurisdiction.

    The Court thus turns to whether Plaintiff has alleged
any facts supporting the existence of general jurisdiction
outside of the "stream of commerce" and Zippo theories.  "For
general jurisdiction to exist over a nonresident defendant...the
defendant must engage in "'continuous and systematic general
business contacts' that 'approximate physical presence' in the
forum state." Schwarzenegger, 374 F.3d at 801 (quoting
Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408,
416 (1984) and Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.,
223 F.3d 1082, 1086 (9th Cir. 2000)).  "General jurisdiction []
calls for an appraisal of a corporation's activities in their
entirety, nationwide and worldwide.  A corporation that operates
in many places can scarcely be deemed at home in all of them."
Daimler AG v. Bauman, 571 U.S. 117, 139 n.20 (2014).  "This is
an exacting standard, as it should be, because a finding of
general jurisdiction permits a defendant to be haled into court
in the forum state to answer for any of its activities anywhere
in the world." Schwarzenegger, 374 F.3d at 801.

    Both Stanford and Nuance are non-resident defendants.

Stanford is located in California.[7]  Nuance appears to be a

Delaware corporation whose principal place of business is

Massachusetts.[8]  While Plaintiff has implied that both Stanford

and Nuance have some presence in Hawaii, Plaintiff has not

detailed the nature of their contacts.  Nor do Plaintiff's

generic suggestions that defendants generally "recruit employees

or students, share research efforts, grants, and publications"

suffice.  See Opp. to Nuance at 12; see also id. at 9-10 (the

defendants also send salespeople, marketers, trainers and

technologists to Hawaii and have business partnerships and

contracts here).  As personal jurisdiction must be assessed as

to each defendant, the Court cannot use these blanket collective

allegations to satisfy the "exacting standard" of general

jurisdiction with respect to either Stanford or Nuance.

---

[7] Pursuant to Stanford's request, Stanford Mot. at 7 n.3, the
Court will take judicial notice of the fact that Stanford
University is located in or around Palo Alto, California, and is
not located in the District of Hawaii.  Pralinsky v. Mut. of
Omaha Ins., No. C 08-03191 MHP, 2008 WL 4532563, at *2 n.3 (N.D.
Cal. Oct. 9, 2008) (taking evidence of the fact that certain
locations were not in the Northern District of California); Fed.
R. Evid. 201.
[8] Nuance is listed in the Hawaii Business Registration database
as a foreign profit corporation incorporated in Delaware whose
principal place of business is Massachusetts.  See
https://hbe.ehawaii.gov/documents/business.html?fileNumber=41552
F1 (last accessed April 5, 2018); see also Nathan v. Fry's
Electronics Inc., 607 F. App'x 623, 623 (9th Cir. 2015) (noting
that the parties agreed there was minimal diversity as the
plaintiff was a California citizen and Nuance incorporated in
Delaware and had its principal place of business in
Massachusetts).

Nor does it appear that general jurisdiction could be
found even if there were factual allegations supporting these
blanket statements.  The Ninth Circuit found that allegations
that a company regularly purchased cars imported by California
entities, had contracts including a choice-of-law provision
specifying California law, regularly retained a California
marketing company, hired a training company incorporated in
California, and maintained a website accessible by people in
California fell "well short" of establishing general
jurisdiction.  See Schwarzenegger, 374 F.3d at 801.  Nor is the
presence of employees working in the state, employees
temporarily visiting the state, and contracts with local
business sufficient to support general jurisdiction.  See Ranza
v. Nike, Inc., 793 F.3d 1059, 1069-70 (9th Cir. 2015).  In
addition, courts have specifically concluded that out-of-state
schools are not subject to general jurisdiction based on
matriculation of out-of-state students from the forum, receipt
of tuition or fund-raising revenue, or a website allowing online
application submission.  See Chira v. Columbia Univ., CV 05-1964
MMM, 2005 WL 8156561, at *6-7 (C.D. Cal. May 3, 2005)
(collecting cases); see also Norris v. Okla. City Univ., No. C-
93-1626-VRW, 1993 WL 313122, at *2 (N.D. Cal. Aug. 3, 1993).
Research affiliation with an entity in the forum is also not
sufficient for general jurisdiction.  See Nanoexa Corp. v. Univ.

of Chi., No. 10-CV-2631-LHK, 2010 WL 4236855, at *4 (N.D. Cal. Oct. 21, 2010).

Simply put, the kinds of facts Plaintiff suggests exist for these defendants, even if factually established in more detail as to each one, are not enough to subject them to general jurisdiction in Hawaii. The Court therefore finds that Plaintiff has not alleged and cannot allege that either Stanford or Nuance has had continuous or systematic contact with Hawaii that approximates physical presence. Therefore, the Court finds Plaintiff cannot establish general jurisdiction over Stanford or Nuance here. See Schwarzenegger, 374 F.3d at 801.

C. Specific Jurisdiction

For specific jurisdiction, the Ninth Circuit has established a three-prong test:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Schwarzenegger, 374 F.3d at 802. "The plaintiff bears the burden of satisfying the first two prongs of the test." Id. If

the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." Id. "If the plaintiff succeeds in satisfying both of the first two prongs, the burden shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476-78 (1985)). Plaintiff's contentions regarding both the Zippo test and "stream of commerce" theory are evaluated as part of the first prong. See Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 418-20 (9th Cir. 1997) (discussing the Zippo test as part of purposeful availment analysis); Holland Am. Line Inc. v. Wartsila N. Am., Inc., 485 F.3d 450, 459 (9th Cir. 2007) (discussing stream of commerce as part of purposeful availment analysis).

The Ninth Circuit has approvingly repeated the guidance from Zippo "that 'the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet.'" Cybersell, 130 F.3d at 419 (quoting Zippo, 952 F. Supp. at 1124). A passive website, even if accessible by anyone anywhere, does not demonstrate purposeful availment. See id. at 420. There has to be "something more" to demonstrate that the defendant directed his activity toward the forum state. Panavision Int'l, L.P. v.

*Toeppan*, 141 F.3d 1316, 1322 (9th Cir. 1998) (citing *Cybersell*, 130 F.3d at 418).  For interactive websites where a user can exchange information with a host computer, the appropriateness of personal jurisdiction depends on the level of interactivity and commercial nature of the exchange of information.  *Zippo*, 952 F. Supp. at 1124.  Where a defendant "clearly does business over the Internet," by entering into contracts with forum residents and involving the knowing and repeated transmission of computer files over the Internet," *Zippo* suggests that personal jurisdiction is most likely appropriate.  See *id.*

        Plaintiff asserts that all of the corporate defendants here fall into the third category of clearly doing commercial business over the Internet regularly.  Opp. to Nuance at 12-13.  This appears to be based on "significant marketing efforts," as well as corporate partnerships and possibly research efforts.  See *id.*  Plaintiff makes some specific allegations as to Microsoft conducting business in the "cloud."  *Id.*  However, with respect to Stanford and Nuance, Plaintiff has provided nothing more than generic factual allegations and conclusory statements that Nuance and Stanford sufficiently conduct commercial operations in Hawaii over the Internet that they have purposefully availed themselves of the privilege of doing business here.  See *id.*  The lack of factual allegations specific to either Nuance or Stanford prevents this Court from

determining whether Plaintiff is correct in his conclusory assertion that the level of interactivity and commercial nature of their websites constitutes purposeful availment.  As such, the Court cannot conclude that he has satisfied the first prong of specific jurisdiction based on the <u>Zippo</u> test.

Moreover, even if purposeful availment could be shown based on the <u>Zippo</u> test, it is not apparent that Plaintiff can satisfy the second prong of specific jurisdiction, requiring a nexus between the forum-related contacts and the claims alleged. It does not appear that any of the claims alleged against either Stanford or Nuance in the Third Amended Complaint arose out of the kind of Internet activity suggested here, such as marketing and research.  It thus does not appear that specific jurisdiction can be established on this basis either.

Turning to Plaintiff's "stream of commerce theory," the Ninth Circuit has held that "[t]he placement of a product into the stream of commerce, without more, is not an act purposefully directed toward a forum state."  <u>Holland</u>, 485 F.3d at 459 (citing <u>Asahi Metal Indus. Co. v. Superior Court</u>, 480 U.S. 102, 112 (1987)).  "Even a defendant's awareness that the stream of commerce may or will sweep the product into the forum state does not convert the mere act of placing the product into the stream of commerce into an act purposefully directed toward the forum state."  <u>Id.</u>  Rather, the plaintiff must allege

"something more" in order to support a theory of purposeful availment.  Id.

Plaintiff seems to imply that Nuance and Stanford have engaged in purposeful marketing efforts in Hawaii, so they have each done "something more" than simply participate in the stream of commerce.  See Opp. to Nuance at 12.  Plaintiff notably has not even alleged what "product" Nuance and Stanford each put into the stream of commerce and which was the subject of their marketing efforts, much less the nature and extent of the marketing efforts.  Rather, he has only argued very generally that the defendants have engaged in marketing efforts connected to the stream of commerce in Hawaii.  Such vague assertions prevent the Court from determining whether or not Nuance or Stanford did anything which provided some "knowledge or expectation" that their products could end up in Hawaii.  See Ass'n of Apartment Owners of Hokua @ 1288 Ala Moana v. Watts Water Techs., Inc., No. CIV. 08-00463, 2010 WL 3853279, at *5 (D. Haw. Sept. 27, 2010) (finding no purposeful availment where the product at issue was purchased indirectly from a distribution chain, not directly from the manufacturer, whose website did not even provide the means to do so).

Plaintiff's generic, collective allegations about stream of commerce and marketing of unspecified products also make it difficult to determine how Plaintiff's claims arise out

of those contacts sufficient to satisfy the second prong of specific jurisdiction. Indeed, it is difficult to imagine how Plaintiff could allege any set of facts supporting a stream of commerce theory which could be related to his claims here, consistent with what he has alleged thus far.

Nor has anything Plaintiff alleged against Nuance or Stanford satisfied the Ninth Circuit's purposeful direction test. To show purposeful direction, the defendant allegedly must have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Schwarzenegger, 374 F.3d at 803 (internal citation and quotation omitted). Plaintiff has not alleged that Nuance or Stanford committed an intentional act, much less that such act was expressly aimed at Hawaii or that they knew it would cause harm likely to be suffered here. All Plaintiff has alleged is that Sullivan supposedly named them as participants in the schemes at issue here, and that allegation is based on a document which does not even mention either Nuance or Stanford by name. See TAC ¶¶ 12, 62, 191 & Ex. L. The allegations in the Third Amended Complaint thus simply do not support that either Nuance or Stanford committed any intentional act, much less a tortious act aimed at Plaintiff in Hawaii.

Finally, the court addresses Plaintiff's suggestion

that there is an email that shows a meeting concerning Ergo and
the Ergo software occurred on Stanford's campus.  <u>See</u> Pl. Supp.
Resp. at 7.  In the first place, Plaintiff has neither alleged
in his Third Amended Complaint that such meeting took place, nor
attached a copy of the email supporting that it occurred.  In
addition, that a single meeting about Ergo occurred on campus
grounds does not show an intentional act by Stanford; indeed, it
is not apparent the university itself even knew about this
meeting, much less that in allowing the meeting to happen was an
act aimed at Hawaii or that it knew harm would be suffered here.
Based on the facts Plaintiff has put forth, this meeting is thus
insufficient to establish personal jurisdiction.  <u>See</u> <u>Axiom</u>
<u>Foods, Inc. v. Acerchem Int'l, Inc.</u>, 874 F.3d 1064, 1068 (9th
Cir. 2017) (single or occasional acts related to the forum are
not sufficient to establish jurisdiction if they only create an
attenuated affiliation with the forum).

        In light of the foregoing, the Court finds that
Plaintiff has not established personal jurisdiction over either
Stanford or Nuance.  Their Motions on this issue are GRANTED.
The Court notes that Plaintiff asks if Stanford must be
dismissed it be without prejudice "as further discovery in this
matter will only bring more evidence to light on the matter and
Stanford's involvement will become apparent."  Opp. to Stanford
at 4.  However, having made only three substantive allegations

against Stanford and Nuance, based on a document which does not name either one, Plaintiff appears to merely be seeking to engage in a fishing expedition hoping to uncover something against Stanford or Nuance.  See TAC ¶¶ 12, 62, 191 & Ex. L. There is no reasonable basis to believe he can demonstrate personal jurisdiction over them.[9]  The Court therefore DISMISSES Stanford and Nuance WITH PREJUDICE, subject to discovery showing that the exercise of either general or specific personal jurisdiction over Stanford or Nuance is appropriate consistent with the foregoing discussion.

## II.  RICO Claim

        Both Stanford and Nuance also argue that Plaintiff has failed to state a RICO claim against them.  Stanford Mot. at 16-17; Nuance Mot. at 5.  In opposition, Plaintiff makes the same arguments regarding each element of a RICO claim that he made in opposition to the motions addressed in the Salesforce Order. See Opp. to Stanford at 3; Opp. to Nuance at 22-27; Pl. Supp. Resp. at 13-14.  The Court therefore incorporates its prior discussion in the Salesforce Order of Plaintiff's RICO claims.

---

[9] At the hearing, Plaintiff claimed that he had reasons for including Stanford and Nuance as defendants and may have inadvertently omitted documentation supporting their inclusion. However, Plaintiff did not offer any hint of what the basis for including Stanford or Nuance might be, and the Court is therefore unable to conclude with any confidence that Plaintiff can articulate such a basis on amendment.

Salesforce Order at 31-53.

Plaintiff's allegations against Stanford and Nuance do not establish that either one engaged in racketeering activity, much less a pattern. All he has alleged is that Sullivan allegedly named them as "participants in the theft, conspiracy, conversion, chain of misappropriation, and fraud by Sullivan." TAC ¶¶ 12, 62, 191. These allegations are not sufficient to establish that either Stanford or Nuance committed any of the racketeering acts the parties contend are at issue, much less that they each committed at least two predicate acts, for the same reasons as stated in the Salesforce Order. See Salesforce Order at 39-48.

The Court's previously stated concerns about Plaintiff's conduct and enterprise pleadings are heightened with respect to Stanford and Nuance because of the very minimal and very general allegations made against them. Taking as true that Sullivan named them as participants, Plaintiff still has not alleged that either Stanford or Nuance associated together with Sullivan for the common purpose of taking the Ergo code. See id. at 49-52. Nor has Plaintiff suggested that Stanford or Nuance participated in the operation or management of the enterprise in any way. See id. at 48-49.

Especially because Plaintiff's belief that Stanford and Nuance were allegedly involved is based on Exhibit L to the

Third Amended Complaint, which the Court has previously noted does not actually name either of these defendants, the Court is concerned that Plaintiff has no factual basis for alleging that either Stanford or Nuance was involved in any racketeering activity. Accordingly, even if the Court had personal jurisdiction over Stanford or Nuance, it would be inclined to dismiss the RICO claims against them without prejudice but also without leave to amend, pending a motion for leave to amend based on discovery suggesting a RICO claim can plausibly be stated against either one.

III. **Fraud Claims**

Next, both Stanford and Nuance argue that Plaintiff has failed to allege fraud with particularity against either of them. Stanford Mot. at 17; Nuance Mot. at 5. Plaintiff has not responded to the arguments concerning his fraud claim. <u>See generally</u> Opp. to Stanford; Opp. to Nuance; Pl. Supp. Resp.

The Court incorporates its fraud discussion from the Salesforce Order. <u>See</u> Salesforce Order at 66-72. Applying that discussion here, Plaintiff has not alleged that Stanford or Nuance has made any false misrepresentation or omission for which they owed a duty to disclose to Plaintiff. Plaintiff also has not alleged that any such statement or omission was made in contemplation of Plaintiff's reliance, or that Plaintiff did rely on it. Nor is it apparent how Plaintiff could ever allege

that he relied on any statement or omission by Stanford or
Nuance, as he claims to not have discovered their alleged
involvement in the scheme until 2015.  As with Plaintiff's RICO
claim, even if the Court had personal jurisdiction here, it
would be inclined to dismiss the fraud claims against Stanford
and Nuance without prejudice and without leave to amend, pending
a motion for leave to amend based on discovery suggesting a
fraud claim can plausibly be stated against either one.

IV.  **Conspiracy**

Finally, Stanford has argued that Plaintiff has not
alleged a conspiracy to steal Plaintiff's property, much less
one that includes Stanford.  Stanford Mot. at 15.  Nuance also
argues that to the extent Plaintiff is attempting to plead
conspiracy to defraud, he has also failed to state a claim.
Nuance Mot. at 5.  Plaintiff has not responded to arguments
concerning whether he has stated a claim for conspiracy.  See
generally Opp. to Stanford; Opp. to Nuance; Pl. Supp. Resp.

Under Hawaii Law, "the accepted definition of a
conspiracy is a combination of two or more persons [or entities]
by concerted action to accomplish a criminal or unlawful
purpose, or to accomplish some purpose not in itself criminal or
unlawful by criminal or unlawful means." Robert's Haw. Sch.
Bus, Inc. v. Laupahoehoe Transp. Co., 91 Haw. 224, 252 n. 28,
982 P.2d 853, 881 n. 28 (Haw. 1999), superseded by statute on

other grounds as stated in Davis v. Four Seasons Hotel Ltd._, 122
Haw.423, 429, 228 P.3d 303, 309 (Haw. 2010).  "[M]ere
acquiescence or knowledge is insufficient to constitute a
conspiracy, absent approval, cooperation, or agreement."  Id.
"Because 'there can be no civil claim based upon a conspiracy
alone,' 'a plaintiff must allege an underlying actionable
claim.'"  Menashe v. Bank of New York, 850 F. Supp. 2d 1120,
1138 (D. Haw. 2012) (quoting Weinberg v. Mauch, 78 Haw. 40, 49,
890 P.2d 277, 286 (Haw. 1995) and Ellis v. Crockett, 51 Haw. 45,
57-58, 451 P.2d 814, 822-23 (Haw. 1969)).  "A civil conspiracy
claim therefore has three elements: (1) the formation of a
conspiracy; (2) wrongful conduct in furtherance of the
conspiracy, i.e., an actionable claim based upon deceit; and (3)
damage."  Id. (internal citation and quotation omitted).

        "The essence of a conspiracy is in an agreement."
Dowkin v. Honolulu Police Dep't, No. CIV. 10-00087 SOM-RLP, 2011
WL 5038916, at *2 (D. Haw. Oct. 24, 2011), as amended (Oct. 27,
2011).  However, all that Plaintiff has alleged here is that
Sullivan named Stanford and Nuance as participants.  See TAC ¶¶
12, 62, 191.  Taking as true that Sullivan named them as
participants, such allegation does not support an inference of
conspiracy because it does not suggest Stanford or Nuance even
had knowledge of or acquiesced in any fraud or theft, much less
that they agreed, cooperated, or approved of the fraud or theft,

as required to establish a conspiracy.[10]  As such, Plaintiff has

not stated a claim for conspiracy against either Stanford or

Nuance.  If the Court had personal jurisdiction over them, it

would be inclined to dismiss the conspiracy claims against them

without prejudice but also without leave to amend, pending a

motion for leave to amend based on discovery suggesting a

conspiracy claim can plausibly be stated against either one.

### CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants

Stanford University and Nuance Communication's Motions to

Dismiss, ECF Nos. 12, 15.  Both Stanford and Nuance are

DISMISSED WITH PREJUDICE for lack of personal jurisdiction,

subject to discovery revealing a basis for personal jurisdiction

over them consistent with the Court's discussion above regarding

the elements of personal jurisdiction.  Even if personal

jurisdiction can be established at some point later in

discovery, Plaintiff should note the Court's concern that he

does not appear to be able to state a plausible factual basis

for the claims discussed here based on the facts he currently

appears to have, as well as the Court's prior discussion of Rule

---

[10] The Court declines to address whether there is an underlying
actionable claim for fraud or conversion against any of the
defendants, as neither party squarely raises that issue.  See
Stanford Mot. at 15 (only addressing conspiracy not underlying
wrongful conduct); Nuance Mot. at 5 (arguing only generally that
Plaintiff has not stated a claim for fraud with particularity).

8's pleading standards, <u>see</u> Salesforce Order at 72-74.  Should Plaintiff seek in the future to show that personal jurisdiction can be exercised over Nuance or Stanford, he should also identify what claims he seeks to bring and sufficient facts to reasonably suggest that such claims can be plausibly stated, in addition to complying with the scheduling order and all applicable rules.

Finally, the Court previously granted Plaintiff leave to file an amended complaint to add Twitter back as a defendant and to address the deficiencies noted in the Salesforce Order. <u>See generally</u> ECF Nos. 130 (granting leave to amend to add Twitter), 134 (Salesforce Order).  The Court now specifies that Plaintiff is GRANTED 30 days from the date of this Order to file an amended complaint.  In amending, Plaintiff should not include any claims or any defendants who have been dismissed with prejudice.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, April 23, 2018.



_____
Alan C. Kay
Sr. United States District Judge

<u>Bralich v. Sullivan, et al.</u>, Civ. No. 17-00547 ACK-RLP, Order Granting Defendants Stanford University and Nuance Communication, Inc.'s Motions to Dismiss.